```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 06-22565-CIV-MORENO
                                    MAGISTRATE JUDGE P.A. WHITE

RONALD A. WILLIAMS,            :

     Plaintiff,                :

v.                             :
                                         REPORT OF
DET. DANIEL SANTANA, ET AL.,   :      MAGISTRATE JUDGE

     Defendants.               :
_____
```

I.  Introduction

This Cause is before the before the Court upon the defendants Santana and Barazal's joint Motion to Dismiss the "Second" Third Amended Complaint [DE# 103].

This case is now proceeding against five defendants: Miami-Dade[1] Detective Daniel Santana (Badge No. 4722); Miami-Dade Detective Adrian Barazal (Badge No. 4555); Miami-Dade Officer Benjamin Furer (Badge No. 5368); Miami-Dade Sergeant Jay Gore (Badge No. 2600); and Director Parker (Chief of Miami-Dade (Metro Dade) Police) in their individual capacities. [DE# 93 - Order Adopting Report and Recommendation issued by the Honorable Federico A. Moreno). The Operative Complaint in this case is the "Second" Third Amended Complaint. [DE# 68].

The Operative Complaint [DE# 68] is proceeding on the following claims:

---

[1] The plaintiff now properly identifies these officers as employees of the "Miami-Dade Police Department." The Metro-Dade Police Department no longer exists, and is now the "Miami-Dade Police Department." The Miami-Dade Police Department is a subdivision of Miami-Dade County, and has police jurisdiction in the unincorporated areas of Miami-Dade County.

### Counts Two and Five - Excessive Force/Assault and Battery

The plaintiff alleges that at the police station Santana questioned him and tried to get him to confess to a shooting, which led to an argument. The plaintiff then claims that he asked Santana and Barazal for an attorney but they continued to question him and try to extract a confession. He further alleges that he refused to allow his photograph to be taken. At that point, Santana left to get an ammonia pack, and when he returned Barazal put him in a headlock while Santana placed the ammonia pack in the plaintiff's mouth, causing him to vomit and foam at the mouth. The plaintiff spit the packet at Santana and Barazal slapped him in the back of the head, knocking him to the floor. Barazal then kicked him and ran out of the room.

### Count Three - Failure to Intervene

The plaintiff alleges that Furer and Gore observed the questioning and observed Santana go to get an ammonia packet, but they failed to stop him. He also alleges that Furer and Gore observed Barazal place him in a headlock and the use of the ammonia packet but failed to intervene. He further claims that Furer and Gore did not check on the plaintiff until he was on the floor crying, yelling and rolling in vomit and foam.

### Count Seven - Substantive Due Process

The plaintiff alleges that Santana and Barazal's allegedly false arrest, use of coercive questioning tactics and perjury violated his Fourteenth Amendment right to substantive due process.

### Count Eight - Failure to Properly Train and Supervise

The plaintiff alleges that Chief/Director Robert Parker failed to adequately train and supervise Barazal, who had a documented history of abusive conduct.  The plaintiff alleges that Parker violated his constitutional rights by failing to properly train Barazal in the use of force and condoned his documented history of unnecessary use of force, and that such resulted in the plaintiff's being deprived of certain constitutional rights.

## II.  Analysis

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6). The complaint may be dismissed if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)(retiring the oft-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim); Watts v. FIU, 495 F.3d 1289 (11 Cir. 2007).  While a complaint attacked for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65.  The rules of pleading do "not require heightened fact pleading of specifics . . . ."  The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(quoting Twombly, 127 S.Ct. at 1964).[2]

Significantly, this Court's analysis upon screening the Operative Complaint under 28 U.S.C. §1915 used the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11 Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). Officers Santana and Barazal move to dismiss the claims pending against them which this Court has already determined are sufficient to survive a motion to dismiss. [See DE# 93].

## Motion to Dismiss

Santana and Barazal argue that the claim that they violated the plaintiff's constitutional rights does not meet the heightened pleading standard and they argue that they are entitled to qualified immunity. [DE# 103].

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, Lee v. Ferraro, 284

---

[2] Despite recent Erickson's reversal of the Tenth Circuit's use of a heightened pleading standard in case against individual state actors who might be entitled to qualified immunity, a case never cited in any Eleventh Circuit opinion, the Eleventh Circuit still occasionally applies a "heightened pleading" standard to complaints alleging §1983 claims against entities who may raise qualified immunity as a defense such as government officials sued in their individual capacities.

F.3d 1188, 1194 (11 Cir. 2002) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)), and it shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee, supra, 284 F.3d at 1194 (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11 Cir. 2001)). Since qualified immunity is a defense not only from personal liability for government officials sued in their individual capacities, but also a defense from suit, it is important for the Court to determine the validity of a qualified immunity defense as early in the lawsuit as is possible. Lee v. Ferraro, supra, at 1194; GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998).

Generally, government officials performing discretionary functions are protected by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier, supra, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Lee, supra at 1194 (quoting Saucier, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." Lee, supra, 284 F.3d at 1194 (quoting Saucier, supra). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Marsh v. Butler County, 268 F.3d 1014, 1031-33 (11 Cir. 2001) (en banc).

5

Claims of excessive force by police officers are cognizable under 42 U.S.C. §1983, as are claims that officers who were present failed to intervene. <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436 (11 Cir. 1985). A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386 (1989); <u>Ortega v. Schram</u>, 922 F.2d 684, 694 (11 Cir. 1991).

Further, the Supreme Court has observed that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." <u>Miller v. Fenton</u>, 474 U.S. 104, 109 (1985). The Court more explicitly identified the liberty interest here at issue in <u>Chavez v. Martinez</u>, 538 U.S. 760, 780(2003) confirming that, under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated. Such a violation will be recognized, however, only where the specific conduct alleged rises to a level of coercive interrogation that "shocks the conscience." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998); <u>Tinker v. Beasley</u>, 429 F.3d 1324 (11 Cir. 2005).

There is no dispute that the defendants were acting within the scope of their discretionary authority. Thus, the question is whether, assuming the plaintiff's best case, the officers' actions violated clearly established law. In the Complaint, the plaintiff describes that he was in an interrogation room from 7:00 p.m. until 3:00 a.m. on October 20, 2002 at the Northside Station. He contends that Santana questioned him about a shooting, which led to an

argument and prompted the plaintiff to ask for a lawyer. The plaintiff further alleges that Santana and Barazal continued questioning him despite his repeated requests for an attorney, trying to get him to confess to the shooting. The plaintiff contends that after he refused to hold his head up in order to take a picture and after he called them "faked cops" for refusing to assist a female officer seeking help with a shooting call at a lounge, Santana left to get an ammonia pack, and when he returned Barazal put him in a headlock while Santana placed the ammonia pack in the plaintiff's mouth, causing him to vomit and foam at the mouth. The plaintiff spit the packet at Santana and Barazal slapped him in the back of the head, knocking him to the floor. Barazal then kicked him and ran out of the room.

Taking the plaintiff at his word, as the Court must do for the purposes of the current motion, the Undersigned concludes that the facts alleged, if true, may state a claim that the officers violated the plaintiff's Fourth and Fourteenth Amendment rights. As stated above, at the time of the plaintiff's arrest, it was recognized by the Courts that unnecessary force upon arrest and some types of coercive interrogation techniques violate an individual's constitutionally protected rights and form the basis for a section 1983 claim. These rights were clearly established at that time. Therefore, the Court cannot find at this stage of the proceedings that the defendants are entitled to qualified immunity.

For these reasons, the Undersigned again finds that the allegations against Santana and Barazal in the Operative Complaint meet the <u>Twombly</u> and any "heightened pleading" standard. The Undersigned further finds that it is premature to determine whether either officer may be not entitled to qualified immunity, and recommends that their Motion to Dismiss [DE# 103] be denied.

III. <u>Recommendation</u>

Based on the foregoing, it is recommended that the Motion to Dismiss [DE# 103] be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 12th day of September, 2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc: Ronald A. Williams, <u>Pro Se</u>
    DC No. M33810
    Dade Correctional Institution
    19000 S.W. 377th Street
    Florida City, FL 33034-6499

    Eric Alberto Rodriguez, Esq.
    Assistant Miami-Dade County Attorney
    Stephen P. Clark Center
    Suite 2810
    111 N.W. 1st Street
    Miami, FL 33128-1993