```
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 06-22565-CIV-MORENO
                                   MAGISTRATE JUDGE P. A. WHITE

RONALD A. WILLIAMS,                :

        Plaintiff,                 :

v.                                 :         REPORT OF
                                           MAGISTRATE JUDGE
                                          ON SUMMARY JUDGMENT
DET. DANIEL SANTANA, ET AL.,       :          (DE#151)

                                   :
        Defendants.
_____
```

On October 18, 2006, the plaintiff, Ronald A. Williams, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983. [DE# 1]. The case is now proceeding against five defendants: Miami-Dade Detectives Daniel Santana, Adrian Barazal , Miami-Dade Officer Benjamin Furer, Miami-Dade Sergeant Jay Gore, and Director Parker (Chief of Miami-Dade Police) in their individual capacities. The Operative Complaint in this case is the "Second" Third Amended Complaint. [DE# 68]. The operative complaint (DE#68) is proceeding on the following claims:[1]

The plaintiff alleges that on October 20, 2002, he and Ms. Thompson, a friend, were detained by Miami Dade Police Officers at the bait and tackle shop. He was transported to the Northside Station for further questioning.

In Counts 2 and 5 of the operative complaint the plaintiff alleges that Officers Santana and Barazal used excessive force, and assaulted him. He contends that at the police station Santana questioned him and tried to get him to confess to a shooting, which led to an argument. The plaintiff then claims that he asked

---

[1]The complaint is proceeding on Counts 2,3, 5, 7 & 8.

Santana and Barazal for an attorney, but they continued to question him and tried to extract a confession. He claims he refused to hold his head up for a photograph. At that point, Santana left to get an ammonia pack, and when he returned Barazal put him in a headlock, while Santana placed the ammonia pack in the plaintiff's mouth, causing him to vomit and foam at the mouth. The plaintiff spit the packet at Santana, and Barazal slapped him in the back of the head, knocking him to the floor. Barazal then kicked him and ran out of the room.

In Count 3, the plaintiff further alleges that Furer and Gore observed the questioning and observed Santana go to get an ammonia packet, but they failed to stop him. He also alleges that Furer and Gore observed Barazal place him in a headlock and use the ammonia packet, but failed to intervene. Furer and Gore did not check on the plaintiff until he was on the floor crying, yelling and rolling in vomit and foam.

The plaintiff alleges in Count 7 that Santana and Barazal's allegedly false arrest, use of coercive questioning tactics and perjury violated his Fourteenth Amendment right to substantive due process.

Lastly, in Count 8, the plaintiff alleges that Chief/Director Robert Parker failed to adequately train and supervise Barazal, who had a documented history of abusive conduct. The plaintiff alleges that Parker violated his constitutional rights by failing to properly train Barazal in the use of force and condoned his documented history of unnecessary use of force, and that such resulted in the plaintiff's being deprived of certain constitutional rights. The defendants filed motions to dismiss which were denied.

This Cause is before the Court upon the defendants' joint

motion for summary judgment [DE# 151] in which they argue that: 1) they are entitled to qualified immunity, 2) Williams' claims of Assault and Battery in Count 5 are based upon state law, 3) Furer and Gore did not observe the use of excessive force and they were not in a position to intervene, and 4) Parker should be dismissed as he had no personal participation.

An Order of instructions was entered informing the plaintiff of his right to respond to the defendant's motion for summary judgment, and instructing him regarding the requirements of Rule 56 of the Federal Rules of Civil Procedure, and the nature of a proper response to such a motion. The plaintiff filed a reply on December 1, 2010. (DE#161)

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the

>       non-moving party has failed to make a
>       sufficient showing on an essential element of
>       her case with respect to which she has the
>       burden of proof. (Citation omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, as the defendant has in this case, the burden then shifts to the nonmoving party, in this case the plaintiff, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir. 1990). The non-moving party, even a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992).

Despite the liberality with which courts are obliged to interpret pro se complaints, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11 Cir. 1990).

Qualified Immunity

Defendants Santana and Barazal argue that they are entitled to qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, Lee v. Ferraro, 284 F.3d 1188, 1194 (11 Cir. 2002) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)), and it shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee, supra, 284 F.3d at 1194 (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11 Cir. 2001)). Since qualified immunity is a defense not only from personal liability for government officials sued in their individual capacities, but also a defense from suit, it is important for the Court to determine the validity of a qualified immunity defense as early in the lawsuit as is possible. Lee v. Ferraro, supra, at 1194; GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998).

Generally, government officials performing discretionary functions are protected by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights

5

of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier, supra, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Lee, supra at 1194 (quoting Saucier, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." Lee, supra, 284 F.3d at 1194 (quoting Saucier, supra). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Marsh v. Butler County, 268 F.3d 1014, 1031-33 (11 Cir. 2001) (en banc).

Claims of excessive force by police officers are cognizable under 42 U.S.C. §1983, as are claims that officers who were present failed to intervene. Fundiller v. City of Cooper City, 777 F.2d 1436 (11 Cir. 1985). A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989); Ortega v. Schram, 922 F.2d 684, 694 (11 Cir. 1991).

Further, the Supreme Court has observed that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." Miller v. Fenton, 474 U.S. 104, 109 (1985). The Court more explicitly identified the liberty interest here at issue in Chavez v. Martinez, 538 U.S. 760,

6

780(2003) confirming that, under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated. Such a violation will be recognized, however, only where the specific conduct alleged rises to a level of coercive interrogation that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Tinker v. Beasley, 429 F.3d 1324 (11 Cir. 2005).

There is no dispute that the defendants were acting within the scope of their discretionary authority in questioning the plaintiff at the station. Thus, the question is whether, assuming the plaintiff's best case, the officers' actions violated clearly established law. In the Complaint, the plaintiff describes that he was in an interrogation room from 7:00 p.m. until 3:00 a.m. on October 20, 2002, at the Northside Station. He contends that Santana questioned him about a shooting, which led to an argument and prompted the plaintiff to ask for a lawyer. The plaintiff's allegations that Officer Barazal placed him in a headlock while Santana placed the ammonia pack in the plaintiff's mouth, causing him to vomit and foam at the mouth, would constitute excessive force, as does his allegation that Barazal slapped him in the back of the head, knocking him to the floor, and kicking him as he ran out of the room. However, these facts are contradicted by the defendants' exhibits in support of their motion for summary judgment.

Defendants Barazal and Santana have submitted affidavits taken on May 3, 2004, during the internal affairs investigation of the plaintiff's allegations of use of excessive force in case no. I.A. 2003-0109. (DE#152-4 & 5). Barazal avers that during Williams' interview concerning the shooting, he fell out of his chair, stating he felt weak. Barazal made sure he was not choking and checked to see if Williams was conscious and responsive, but failed

7

to get a response. Santana placed an ammonia inhalant in Williams' nose, and waived it in front of him. He remained lying on the ground and they called Fire Rescue. Miami Dade Fire Rescue (MDFR) arrived on the scene. His vital signs were checked and Fire Rescue stated Williams was faking. He remained on the ground when fire rescue left. The paperwork was completed and Williams was transported to Dade County Jail.

Barazal affirms he did not place Williams in a headlock, nor throw him to the ground, nor slap him on the back of the head. He did not witness Santana place an ammonia packet inside Williams' mouth. Officer Barazal states categorically he did not strike Williams, and he did not witness Officer Santana strike him. Barazal stated in the affidavit that no Miami Dade police officer struck Williams.

Santana's affidavit does not differ from Barazal's in any material way. He stated that he was called in reference to a shooting on October 20, 2002, at a Flea Market on NW 79th St. He and Officer Barazal conducted an initial investigation, and checked on the status of the victim at Jackson Hospital. Upon leaving the hospital, the police radio indicated that Ronald Williams was the subject of the shooting on NW 79th street. Santana and Barazal made contact with Williams and transported him to the Northside Station.

Santana stated that when he walked into the interview room Williams was lying on the ground almost sleeping and intoxicated. They checked to see if he was responsive, but he continued lying on the ground mumbling words. Santana waived an ammonia packet in front of his nose to get him to wake up. Santana did not place the packet in his mouth or strike him. Both officers called fire rescue who reported Williams was either faking or intoxicated. Santana did not witness Barazal place him in a headlock, throw him to the ground or slap him on the back of the head.

The defendants' affidavits are supported by that of Tina Golden, employed as a Record's Clerk by the Miami Dade Police Department Professional Compliance Bureau.(DE#152-3) She avers in her affidavit that Williams' complaint filed with the Miami Dade Police Department, alleging use of excessive force by Santana and Barazal, Case no. IA 03-0109, was not sustained due to insufficient evidence to demonstrate a violation.

She includes with her affidavit Exhibit A; a copy of the Miami Dade Fire Rescue Department Alarm Unit's Report, submitted in the course of the internal affairs investigation. In that investigation Williams provided a statement to an investigator with the Compliance Bureau, revealing he had informed the detectives during questioning that he was high and drunk. Further, official records indicated that Williams stated he was not injured, but faked as if he were. He stated he was not kicked or punched by Miami Dade Police. When asked if the officer placed the ammonia packet in his mouth, Williams stated that the packet was held in his nose longer than it should have been. He refused to being treated by Fire Rescue and stated he had no complaints.

Official records of Miami Dade Fire Rescue, and the Affidavit of Teresa Tojeiro, Central Bureau Manager, indicated that when Fire Rescue arrived on the scene, Williams had no complaints and they left. They reported the call as "False Malicious", used for a false alarm. The records further contained the remarks "Prisoner Fainting Routine per Unit 2nd Floor GIU Office".  (DE#152-2)

In his motion/Response in Part to the defendants' motion for summary judgment (DE#161), the plaintiff includes records from the Miami Dade Police Department , and statements made by Thompson, the

co-defendant charged in the shooting. In the Complaint, signed as true by Santana and Barazal, the co-defendant stated that she and defendant were going "to do" the victim. They located him and the defendant produced a firearm and pointed at the victim. He fired several shots, striking a second victim, an innocent bystander, then continued to shoot the victim in the mid-section. He fled with the co-defendant waiting in a vehicle.

The two victims were shown a photograph of Williams and positively identified him. Santana stated he spoke with the victim on December 23, 2002, in the intensive care unit, who informed him that he used to date Ms. Thompson, and that while at the market with friends, Williams walked up to him and started shooting. Victim Altidor and Witness Onibiyo provided taped statements of the incident and made positive identifications. (Exhibits A & B)

The plaintiff's exhibit does not support a claim of use of unlawful force, but relates more to his conviction. He again reiterates in his response that the packet of ammonia was placed in his mouth causing him to vomit, and that he was kicked and assaulted by the officers.

The plaintiff's arguments are clearly frivolous when faced with the evidence supporting the defendants' motion for summary judgment. Both detectives have sworn under oath that the plaintiff appeared drunk, and upon failing to obtain a response called fire rescue. The plaintiff was seen by the Miami Fire Rescue immediately after his alleged assault. Certainly, if the plaintiff had been forced to vomit and was mouthing foam, and/or were covered with bruises, it would have been noted by Fire Rescue. Further, if the plaintiff had been assaulted, he made no mention of this to Fire Rescue. The MDFR surmised, after viewing the plaintiff that his complaints were faked and indicated this on their official documents.

Most damaging to the plaintiff are his own admissions made under oath during the course of the internal affairs investigation. The plaintiff admitted that he was not assaulted, that the ammonia packet was not placed in his mouth, and that he essentially faked his symptoms. The complaint was dismissed based upon the plaintiff's failure to support his claim.

The plaintiff has failed to successfully support his claim of the use of excessive force and the defendants are entitled to qualified immunity. [2]

The plaintiff's claims of assault and battery thereby fails. Plaintiff cannot proceed under the Court's pendant jurisdiction, because he has not raised a cognizable federal claim for relief. Further, in the Eleventh Circuit, the analysis of excessive force is identical in Federal and Florida law. Sullivan v City of

---

[2] The plaintiff makes a conclusory claim of assault and battery during interrogation, and arrest without probable cause. It is clear from the above Report that the plaintiff's claims of assault and battery during interrogation must fail, and the plaintiff has failed to demonstrate a denial of due process accorded to him by the Fourteenth Amendment.

Further, the detectives clearly had probable cause for his arrest. A warrantless arrest without probable cause violates the Fourth Amendment and can form the basis for a §1983 claim. Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11 Cir. 2002). However, if probable cause existed for an arrest, then the Fourth Amendment was not violated. Jordan v. Mosley, 487 F.3d 1350, 1355 (11 Cir. 2007). Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 1355 (internal quotation and citation omitted).

Detective Barazal stated in his affidavit that the detectives had received a call from a witness which came over the Northside frequency providing the location of Ronald Williams, the subject of the shooting. He was then picked up for questioning.

Pembroke Pines, 161 Fed. Appx 906,911 (11 Cir. 2006).

### Furer and Gore, Failure to intervene

The Undersigned finds that there has been no unconstitutional use of excessive force. Therefore the claims against Furer and Gore for failure to intervene are without merit.

### Director Robert Parker

The plaintiff raised specific facts claiming that Parker may have violated his constitutional rights by failing to adequately train and supervise Officer Barazal. The plaintiff alleges that Barazal had a long, documented history of violent, irregular behavior and disregard of citizens' constitutional rights (from July 6, 1998 to August 9, 2002), including eight documented incidents of violence, at least one of which resulted in a written reprimand. The plaintiff claims that Parker was on notice of Barazal's violent and dangerous propensities but failed to act, and the failure to act resulted in physical injury to the plaintiff.

To establish a claim against Parker on the theory of failure to train his subordinate officer, the plaintiff must establish (1) that there was a failure to adequately train the officer, (2) that the failure to train was the result of a policy, i.e., either there was an express policy or the failure to train amounts to "deliberate indifference" to the rights of persons with whom the officer comes into contact, and (3) that the failure to train policy caused the officer to violate the plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 389-91 (1989); Bruce v. Beary, 498 F.3d 1232 (11 Cir. 2007); Gold v. City of Miami, 151 F.3d 1346, 1350 (11 Cir. 1998). The plaintiff must ultimately present some evidence that the director knew of a need to train in a particular area, and that he made a deliberate choice

not to take any action. <u>Gold</u>, 151 F.3d at 1350-51. Deliberate indifference may be established by a pattern of constitutional violations or by a single decision under appropriate circumstances. <u>Bruce</u>, 498 F.3d at 1249.

Parker argued in his motion to dismiss that the claim he violated the plaintiff's constitutional rights by failing to properly train and supervise Officer Barazal did not meet the heightened pleading standard and that he is entitled to qualified immunity. The Undersigned recommended that Parker's Motion to dismiss be denied, stating that the plaintiff has raised sufficient facts so that the claim against Parker should proceed beyond this stage of the proceedings.

At the summary judgment stage, however, the defendants have provided sufficient support to demonstrate that there was no direct involvement by Director Parker and that at the time of the claim he could not have had any notice of repetitive excessive force actions by Officer Barazal.

The plaintiff has submitted a statement entitled "Employee Profile General Log for Detective Barazal, indicating multiple instances of commendations from 1998 to 2007, and multiple allegations of use of excessive force.

Tina Golden, of the Professional Compliance Bureau states in her affidavit that neither Santana nor Barazal had any <u>sustained</u> complaints of excessive force before the 2002 incident, and that both officers had received multiple commendations. She indicates that on September 13, 2000, Barazal received one reprimand for leaving defendants in his car while filling out paperwork nearby, with the motor turned off and the windows up, resulting in a hot temperature in the car.

Eliel Flores, Records Supervisor of Miami Dade County, avers

in his affidavit that Barazil showed no discipline in his record related to excessive force as of October 20, 2002, the relevant time period. His Performance Report indicated an above satisfactory record from 1999-2000, and outstanding from 2000 thru 2002. He was described as a mature individual, able to assess situations and take appropriate action.

Therefore, the plaintiff has failed to demonstrate that Detective Barazal was known to be a violent detective who consistently uses excessive force. Defendant Supervisor Parker may therefore not be held liable for failure to adequately train Defendant Barazal, and this claim must fail.

### Conclusion

Based on the foregoing, it is recommended that: 1) the joint motion for summary judgment by the defendants [DE# 151] be granted; and 2) this case be closed.

It is so recommended at Miami, Florida, this 15th day of December, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Ronald A. Williams, Pro Se
      M33810
      Dade Correctional Institution
      Address of record

      Eric Rodriguez, Asst. County Attorney
      Attorney of record

14